[Cite as *McGrew v. McGrew*, 2017-Ohio-7854.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| DAVID M. MCGREW | | C.A. No. 28310 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| SHARON L. MCGREW | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No. 2011-07-1956 |

DECISION AND JOURNAL ENTRY

Dated: September 27, 2017

---

TEODOSIO, Judge.

{¶1} David M. McGrew appeals the decree of divorce entered on June 27, 2016, by the Summit County Court of Common Pleas, Domestic Relations Division. We affirm in part, and reverse and remand in part.

I.

{¶2} This divorce proceeding was initiated in 2011 by David McGrew against Sharon McGrew. The matter went to trial in June and July of 2015, with the trial court granting a divorce and entering the decree of divorce in June 2016. Mr. McGrew now appeals, raising five assignments of error. At issue are the division of marital property and marital debt, the parenting plan with regard to the McGrews' daughter, and the award of attorney fees to Ms. McGrew. During oral argument, Mr. McGrew informed this Court that his second assignment of error had been resolved, and withdrew it from consideration.

II.

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN FINDING THAT THE CERTIFICATE OF DEPOSIT AT CF BANK WAS TRANSMUTED FROM SEPARATE TO MARITAL PROPERTY.

{¶3} In his first assignment of error, Mr. McGrew argues the trial court erred in treating a certificate of deposit as partially marital property and partially separate property. Mr. McGrew contends that the trial court "provided no logical or legal explanation for the bifurcated treatment of the [c]ertificate of [d]eposit as both marital and separate property" and "committed an abuse of discretion in finding that any portion of the [c]ertificate of [d]eposit was transmuted from separate to marital." We agree that the trial court did not apply the correct analysis.

{¶4} R.C. 3105.171(B) provides that, "in a divorce proceeding, the trial court must classify the parties' property as either marital property or separate property, after which it must divide the property equitably." *Fetzer v. Fetzer*, 9th Dist. Wayne No. 12CA0036, 2014–Ohio–747, ¶ 22. Marital property includes all real and personal property owned by the parties that was acquired by either or both of them during the marriage. R.C. 3105.171(A)(3)(a)(i). "'Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate.'" *Collins v. Collins*, 9th Dist. Summit No. 27311, 2015–Ohio–2618, ¶ 38, quoting *Reed v. Reed*, 3d Dist. Allen No. 1–09–63, 2010–Ohio–4550, ¶ 8. Separate property includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage * * *." R.C. 3105.171(A)(6)(a)(ii). Whether property is marital or separate "is a question of fact that this Court reviews under a civil manifest weight standard." *Fetzer* at ¶ 21, quoting *Hahn v. Hahn*, 9th Dist. Medina No. 11CA0064–M, 2012–Ohio–2001, ¶ 20.

**{¶5}** "[B]efore an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice. Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002–Ohio–2320, ¶ 10. Manifest weight of the evidence pertains to the burden of persuasion. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, ¶ 19. In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, ¶ 21.

**{¶6}** In its decree of divorce, the trial court made the following findings. During the period of 1995 through 2013, Mr. McGrew operated a business known as MCS Marketing, Inc., of which he was the president and Ms. McGrew was the sole shareholder. In 2009, Mr. McGrew lent MCS Marketing, Inc. $70,000.00 of his separate property. In June 2010, Mr. McGrew applied for a $51,200.00 loan from Cuyahoga Falls Bank, signing the application for the loan and the note, and purchasing a certificate of deposit with his separate property in the amount of $53,895.00 as collateral for the business loan. At the time of trial, the loan balance was $50,970.60, while the certificate of deposit balance was $53,718.86. The trial court noted that monthly payments had therefore not been made towards the loan balance.

**{¶7}** At trial, Mr. McGrew argued he should be awarded the certificate of deposit as his separate property and that the Cuyahoga Falls Bank loan should be divided equally between the parties. The court found:

> It is clear to this court from the evidence presented that [Mr. McGrew] alone
> managed MCS Marketing, Inc. and Alumni Partners and made the decisions with

respect to these businesses. He made the decision to collater[al]ize a marital business debt with a certificate of deposit purchased with his separate property. He also made the decision not to make monthly payments on the note to reduce the debt in question. More importantly however, is what he did with income generated by the company in 2011, 2012, and 2013. In 2011, shareholder loans made to the company were reduced by $15,105 from $125,532 at year beginning to $110,427 at year end. In 2012, shareholder loans were reduced by $19,174 from $110,427 at year beginning to $91,253 at year end. In 2013, shareholder loans were reduced by $25,716 from $89,253 at year beginning to $63,537 at year end. In this three year period the shareholder loans were reduced by $59,995. None of this money was paid to [Ms. McGrew] who was the sole shareholder. The monies were paid to [Mr. McGrew] for loans he had made to the company from his separate property in 2009. He clearly made a conscious decision to repay himself rather than repaying in full the only other creditor of the business, Cuyahoga Falls Bank, thereby exposing [Ms. McGrew] to liability for at least 50% of this debt. Further, [Mr. McGrew] collected interest income of $2,938 in 2001, $2,721 in 2012, and $3,006 in 2013 for loans he had made in prior years to MCS Marketing, Inc.

Based upon the evidence presented, the court finds that the Cuyahoga Falls Bank debt in the approximate [amount] of $50,870.60 is a marital debt. The court further finds that plaintiff's actions in operating the business transmuted the certificate of deposit from separate property to marital property to the extent of the payoff of the business loan to Cuyahoga Falls Bank. Any amount in the Certificate of Deposit above the payoff of the Cuyahoga Falls Bank loan constitutes [Mr. McGrew's] separate property.

{¶8} In *Kuehn v. Kuehn*, the Twelfth District held that nonmarital property could be converted to marital property by the process of transmutation and outlined six factors a court should consider when determining whether separate property was transmuted into marital property. *Kuehn v. Kuehn*, 55 Ohio App.3d 245 (12th Dist.1988), at syllabus; *see Hazen v. Hazen*, 9th Dist. Medina No. 2159, 1993 WL 261566, *1 (July 14, 1993). However, since that decision, "amendments to the Revised Code have restricted, if not rendered obsolete, the application of that test." *Pruitt v. Pruitt*, 9th Dist. Medina No. 2484-M, 1996 WL 221893, *2 (May 1, 1996). R.C. 3105.171(A)(6)(b) provides: "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." "Accordingly, traceability is the

issue when determining whether separate property remains separate property once it has been commingled with marital property." *Bucalo v. Bucalo*, 9th Dist. Medina No. 05CA0011–M, 2005–Ohio–6319, ¶ 13, citing *Wheeler v. Wheeler*, 9th Dist. Medina No. 3188–M, 2001 WL 1581574, *2 (Dec. 12, 2001). *See Adams v. Adams*, 6th Dist. Wood No. WD-09-022, 2009-Ohio-6257, ¶ 48 (noting that following the enactment of R.C. 3105.171, the transmutation doctrine was no longer applicable and that the key is the "traceability" of the property); *Peck v. Peck*, 96 Ohio App.3d 731, 734 (12th Dist.1994) (noting *Kuehn* had stood for the proposition that under certain circumstances separate property may be converted to marital property when commingled, but that R.C. 3105.171(A)(6)(b) shifted the focus to "traceability"). *But see Louis v. Louis*, 9th Dist. Wayne No. 10CA0047, 2011-Ohio-4463, ¶ 9 (concluding that when real property is involved, the six-factor *Kuehn* test leads to a more thorough analysis).

{¶9} As we have stated, the identification of property as marital or separate is a question of fact. Although nonmarital property may be converted to marital property, the trial court did not make a finding that property was commingled or engage in an inquiry of traceability as set forth in R.C. 3105.171(A)(6)(b) when it found that the certificate of deposit had been "transmuted" from separate property to marital property. We note that a trial court has discretion to equitably divide marital property and marital debts in the attempt to formulate a division that is fair under the circumstances; however, separate property may not simply be converted to marital property for purely equitable purposes, but rather, is dependent upon the requisite factual analysis. *See Smith v. Smith*, 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶ 8. We also note that the analysis engaged in by the trial court focuses on the income generated by MCS Marketing, Inc. to pay down shareholder loans, with the money being paid to Mr. McGrew for loans he made to the company in 2009, rather than to Ms. McGrew, with the trial court

finding that his "actions in operating the business transmuted the certificate of deposit from separate property to marital property." We are unable to construe these findings as an examination of the commingling and traceability of the certificate of deposit, which was collateral for the 2010 loan. We therefore conclude the trial court did not engage in an analysis or make factual findings that would support the conversion of the certificate of deposit from separate property into marital property.

{¶10} Mr. McGrew's first assignment of error is sustained.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED IN FINDING THAT HUSBAND SHARED ANY RESPONSIBILITY FOR THE PARTIES' TAX DEBTS IN 2011, 2012, AND 2013.

{¶11} At oral argument, the second assignment of error was withdrawn because the issue had been resolved and is now moot.

## ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN DETERMINING THAT THE MEDICAL BILLS INCURRED BY HUSBAND RELATED TO DIAGNOSIS OF AND TREATMENT FOR THE PARTIES' SPECIAL NEEDS DAUGHTER SHOULD BE HIS SOLE RESPONSIBILITY.

{¶12} In his third assignment of error, Mr. McGrew argues the trial court erred in allocating to him sole responsibility for medical bills incurred for diagnostic testing. We disagree.

{¶13} "R.C 3105.171(C)(1) requires trial courts to divide marital property equally, except to the extent that an equal division would be inequitable. Although the allocation of debt is not specifically addressed in the statute, the division of property also includes marital debt." *Smith* at ¶ 8. "Thus, although equal division may be a starting point for the division of debt, a

trial court may divide debt unequally if an equal division would be inequitable. *Id.* "[A] division need not be equal to be equitable." *Id.* at ¶ 10.

{¶14} A domestic relations court enjoys broad discretion in making "an equitable distribution of the parties' assets and liabilities." *Falah v. Falah*, 9th Dist. Medina No. 15CA0039-M, 2017-Ohio-1087, ¶ 30, quoting *Prohaska v. Prohaska*, 9th Dist. Medina No. 2946-M, 2000 WL 530359, *8 (May 3, 2000). Consequently, we apply an abuse of discretion standard of review when presented with a challenge to the court's division of marital debt. *Falah* at ¶ 30. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶15} The trial court found that Mr. McGrew took his daughter for extensive testing and evaluation for her developmental issues during the pendency of the case. The trial court further found Mr. McGrew "solely responsible for these medical bills because the defendant did not consent to these expenditures and they were incurred in violation of the restraining orders of this court."

{¶16} Mr. McGrew argues that the purported violation of a mutual restraining order does not transmute a marital debt into a personal debt. Mr. McGrew also argues that the debt itself was for a valid marital purpose because it was for the care of the child, and that as such, it is a marital debt that should be borne equally by the parties. He further contends that the court's reliance upon Ms. McGrew not providing consent is misplaced because she had a history of not consulting or informing him about their daughter's medical condition.

**{¶17}** The trial court did not classify the medical bills arising from the testing conducted at Summa and the University of Kentucky as a separate debt, nor did the trial court find the medical bills were transmuted into a separate, personal and non-marital debt. Rather, the debt of $12,887.67 was allocated to Mr. McGrew by the trial court because it found he violated the restraining orders of the court and because Ms. McGrew had not consented to the testing. We note "[t]he weight to be given the evidence and the credibility of the witnesses are primarily for the triers of fact." *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.*, 42 Ohio App.3d 6, 13 (9th Dist.1988). The trial court acts within its discretion in allocating marital debt for equitable purposes, and a division need not be equal to be equitable. Consequently, we conclude the decision of the trial court to allocate the medical bills at issue was not unreasonable, arbitrary, or unconscionable, and the trial court did not abuse its discretion in doing so.

**{¶18}** Mr. McGrew's third assignment of error is overruled.

ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT ERRED IN REFUSING TO MODIFY THE HUSBAND'S COMPANIONSHIP SCHEDULE WITH THE PARTIES' SPECIAL NEEDS DAUGHTER.

**{¶19}** In his fourth assignment of error, Mr. McGrew argues the trial court erred in refusing to modify the parenting plan because it "failed to properly ground its determination * * * in any evidence" and "failed to engage in any analysis whatsoever along the lines contemplated by R.C. 3109.04. We disagree.

**{¶20}** R.C. 3109.04(E)(1)(a) provides:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting

decree, and that the modification is necessary to serve the best interest of the child.

Thus, although a finding of changed circumstances is a prerequisite to modifying a prior decree allocating parental rights and responsibilities, the statute does not require specific findings in a court's refusal to modify. Furthermore, the trial court made several findings in support of its ruling, noting that Mr. McGrew was seeking to modify summer vacation and Christmas vacation parenting time, even though the last parenting plan agreement, filed approximately three months prior to trial, contained time provisions for summer and Christmas vacation. The trial court further noted that Ms. McGrew was opposed to modifying the parenting plan, and had indicated that the holiday schedule prior to its implementation was a "mess," and that the parenting plan was written specifically to avoid such problems. After making these findings, the trial court stated: "Based upon all of the evidence presented, the court finds that [Mr. McGrew's] motion to modify the parenting plan is not well taken and should be denied in its entirety."

{¶21} We conclude the trial court did not abuse its discretion in denying Mr. McGrew's motion to modify the parenting plan. Mr. McGrew's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR FIVE

THE TRIAL COURT ERRED IN AWARDING ATTORNEYS' FEES TO WIFE.

{¶22} In his fifth assignment of error, Mr. McGrew argues the trial court erred in awarding attorney fees to Ms. McGrew. We disagree.

{¶23} Attorney fees in connection with a divorce may be awarded under R.C. 3105.73(A), which provides:

> In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties'

marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

"'Because a court addresses an award of attorney fees through equitable considerations, a trial court properly can consider the entire spectrum of a party's actions, so long as those actions impinge upon the course of the litigation.'" *Grosse v. Grosse*, 9th Dist. Summit No. 27159, 2014-Ohio-5642, ¶ 9, quoting *Padgett v. Padgett*, 10th Dist. Franklin No. 08AP–269, 2008–Ohio–6815, ¶ 17. A trial court has broad discretion in considering an award of attorney fees, and an award will only be reversed upon an abuse of the trial court's discretion. *Guziak v. Guziak*, 80 Ohio App.3d 805, 816 (9th Dist.1992).

**{¶24}** Mr. McGrew first argues the trial court erred because it focused solely on the time spent on the litigation by Ms. McGrew's attorneys, while ignoring the expenditures incurred by Mr. McGrew and the time spent on the litigation by his attorneys. The trial court was under no obligation to, in some manner, engage in a balancing of the time and expenditures related to attorney fees with regard to each party, and Mr. McGrew provides no legal authority in support of this argument. The trial court need only find such an award equitable and "may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A).

**{¶25}** Mr. McGrew also argues that he was not solely responsible for "the multitude of pretrial motions," and states that during his period of self-representation, he filed only six of his own motions. This statement is not accurate. An order granting the withdrawal of Mr. McGrew's attorney was filed on February 15, 2013. Subsequent to that withdrawal, and prior to Attorney James E. Brown entering his appearance, the following motions were filed, pro se, by Mr. McGrew:

1. motion to compel and request for reimbursement of attorney fees (filed 2/22/13);

2. motion for psychological assessment (filed 2/25/13);

3. motion to remove counsel and request for reimbursement for attorney fees and other costs plus fines and sanctions to be levied against the defendant attorneys (filed 2/26/13);

4. motion to compel (filed 5/10/13);

5. motion for extension (filed 6/10/17);

6. emergency motion for return of misappropriated non-marital assets bequeathed for the express purpose of the college tuition of parties' son (filed 6/11/13);

7. motion that the Charles W. McGrew IV and David M. McGrew irrevocable trust is separate, non-marital property (filed 7/11/13);

8. motion that defendant (wife) is exclusively and solely responsible to pay all federal, state, county and city fines, penalties and outstanding taxes owed as a result of defendant (wife) filing fraudulent tax returns (filed 7/11/13);

9. motion for clarification (filed 8/26/13);

10. motion re: disposition of foreign corporation (filed 10/31/13);

11. motion re: compel listing of house (filed 11/21/13);

12. motion re: emergency hearing (filed 12/13/13);

13. motion for contempt and emergency hearing with affidavit and exhibits (filed 12/18/13);

14. motion re: suspension of monthly spousal support payments as set forth by this court at July 30, 2013[,] hearing (filed 12/20/13);

15. plaintiff motion to strike defendant (wife) affidavit of March17, 2014[,] as it is not based on her personal knowledge of facts (filed 3/31/14);

16. emergency motion to reconsider order designating wife solely responsible for sale of marital residence (filed 4/2/14).

Although several motions were filed by Ms. McGrew during this time period, Mr. McGrew's accounting of the number of pro se motions filed is incorrect.

**{¶26}** Mr. McGrew further contends that the attorney fees award of $25,000.00 is an "entirely arbitrary * * * round number * * * unrelated to any specific number of hours worked by [Ms. McGrew's] counsel, or costs supposedly incurred." Mr. McGrew then suggests the amount "seemed deliberately designed * * * to almost perfectly offset the awards granted to [him] elsewhere in the Judgment Entry as to division of marital assets." In its award of attorney fees, the trial court found that Ms. McGrew had incurred attorney fees in the amount of $74,945.00 and costs in the amount of $10,226.89 in defending the action, and that she still owed her attorneys $28,161.24 through trial. These figures were set forth in the affidavit of Ms.

McGrew's attorney, Robyn C. Bergman, on July 24, 2015. It was not an abuse of discretion for the trial court to round the amount down to an award of $25,000.00 where there was evidence indicating that she owed at least $28,161.24 in attorney fees.

{¶27} We conclude the trial court did not abuse its discretion in awarding attorney fees to Ms. McGrew. Mr. McGrew's fifth assignment of error is overruled.

III.

{¶28} Mr. McGrew's first assignment of error is sustained. Mr. McGrew's second, third, fourth, and fifth assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part, and reversed and remanded in part.

Judgment affirmed in part,
reversed in part,
and remanded in part.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

GARY M. ROSEN and JOSHUA A. LEMERMAN, Attorneys at Law, for Appellant.

THOMAS R. HOULIHAN, Attorney at Law, for Appellee.