[Cite as *Kim v. Kim*, 2020-Ohio-22.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SHANA E. KIM

    Appellee

v.

JOHN Y. KIM

    Appellant

C.A. Nos.    28684
                29144

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2015-10-3198

DECISION AND JOURNAL ENTRY

Dated: January 8, 2020

---

SCHAFER, Judge.

{¶1} Defendant-Appellant, John Y. Kim, appeals the judgments of the Summit County Court of Common Pleas, Domestic Relations Division, granting a divorce decree and awarding Plaintiff-Appellee, Shana E. Kim, attorney fees.

I.

{¶2} This appeal stems from a divorce action between John Y. Kim ("Husband") and Shana E. Kim ("Wife"). Husband and Wife were married in 1997 and three children were born of the marriage. Wife filed a complaint for divorce on October 25, 2015. Husband answered and eventually filed a counterclaim for divorce.

{¶3} Husband is a licensed attorney and financial advisor. He owns Symphony Financial Services, Inc. ("Symphony") and Kim & Associates, LLC ("K&A"). Although Wife worked outside the home in the early years of their marriage, she became a full-time stay-at-home parent in 2003.

{¶4} Although the parties entered into stipulations as to the value and allocation of some of their marital assets, the matter proceeded to trial on the disposition of specific property, the disposition of the life insurance policies held within an irrevocable trust, and Husband's income available for spousal support. The trial court issued a final decree of divorce on May 26, 2017. The decree provided for property division, spousal support to Wife, a distributive award to Wife, and attorney fees to Wife.

{¶5} Husband filed a timely appeal, raising five assignments of error. Wife filed a motion to strike Husband's brief alleging that Husband had attached impermissible materials to his brief in violation of Loc.R. 7(B)(10) of the Ohio Ninth District Court of Appeals, and that Husband was seeking to introduce evidence that was not part of the record below. This Court thereafter ordered the non-complying appendix attachments to be stricken, but declined to strike Husband's brief in its entirety.

{¶6} Husband subsequently filed a motion requesting that this court reconsider its order striking Husband's appendix attachments, arguing that he was not seeking to add new matter to the record because the attachments were properly admitted into evidence at trial, but that "[t]hrough inadvertence or otherwise, the documentation was not submitted to the Court *completely*." This Court denied Husband's motion because the documents stricken were not permitted to be part of the appendix pursuant to Loc.R. 7(B)(10). This Court noted, however, that Husband was not precluded from submitting the issue to the trial court pursuant to App.R. 9(E).

{¶7} Husband thereafter filed a motion to correct the record in the trial court pursuant to App.R. 9(E). Following a hearing, the trial court denied Husband's motion and granted Wife

attorney fees.  Husband filed a timely appeal raising two assignments of error related to the grant of attorney fees.

{¶8}  This Court sua sponte consolidated the appeals.  We have reordered the assignments of error for ease of analysis.

II.

**Assignment of Error I**

**The trial court erred by concluding that the cash value of life insurance policies held within the John Y. Kim Irrevocable Trust constitutes marital property subject to division.**

{¶9}  In his first assignment of error, Husband contends that the trial court erred when it determined that the cash value of the life insurance policies held within the John Y. Kim Irrevocable Trust was marital property subject to division.

{¶10}  Pursuant to R.C. 3105.171(B), a court is required during divorce proceedings to determine what of the parties' property constitutes marital property and what constitutes separate property.  "Because the determination of whether property is marital or separate is a fact-based determination, we review a trial court's decision under a manifest-weight-of-the-evidence standard."  *Kolar v. Kolar*, 9th Dist. Summit No. 28510, 2018-Ohio-2559, ¶ 30, citing *Morris v. Morris*, 9th Dist. Summit No. 22778, 2006-Ohio-1560, ¶ 23.  Accordingly, before reversing such a judgment, this Court "must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice."  *Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002-Ohio-2320, ¶ 10.  In weighing the evidence, we must always be mindful of the presumption in favor of the finder of fact.  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21.  "Only in the

exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *Boreman* at ¶ 10.

{¶11} On appeal, Husband argues that the cash value of the life insurance policies held within the John Y. Kim Irrevocable Trust did not constitute marital property because they are not property owned by either spouse. An irrevocable trust is an independent third-party entity, and, generally, neither the trust nor the assets held by such a trust are subject to equitable division in a divorce. *See Guagenti v. Guagenti*, 3d Dist. Allen No. 1-16-47, 2017-Ohio-2706, ¶ 70. However, "'[m]arital property'" by definition includes "[a]ll interest that either or both of the spouses currently has in any real or personal property," and may include a property interest short of absolute ownership. R.C. 3105.171(A)(3)(a)(ii); *see Guagenti* at ¶ 71. Property paid for with marital funds, but that is held by a third party, including a trust, may be treated as marital property under some circumstances. *Goswami v. Goswami*, 152 Ohio App.3d 151, ¶ 61 (7th Dist.2003), citing *Baker v. Baker*, 83 Ohio App.3d 700, 703 (9th Dist.1992); *see Katz v. Katz*, 10th Dist. Franklin Nos. 13AP-409, 13AP-417, 2014-Ohio-1255, ¶ 24-25; *Vulgamore v. Vulgamore*, 4th Dist. Pike No. 16CA876, 2017-Ohio-4114, ¶ 20-24; *Janosek v. Janosek*, 8th Dist. Cuyahoga Nos. 56771, 86777, 2007-Ohio-68, ¶ 75-76. "The party seeking to have an asset classified as separate property must prove by a preponderance of the evidence that the asset can be traced to separate property." *Katz* at ¶ 15. Accordingly, we agree with the Third District's holding in *Guagenti*, that when reviewing a trial court's determination regarding the nature of an irrevocable trust in the context of a divorce proceeding, a "case-by-case approach based upon the intent and conduct of the relevant parties with regard to the formation and the operation of the trust" to be the most appropriate approach and consistent with the manifest weight standard of appellate review. *Id.* at ¶ 69.

{¶12}  In this case, the trial court made the following findings regarding the John Y. Kim Irrevocable Trust.  The parties were married March 29, 1997.  Husband executed the John Y. Kim Irrevocable Trust Agreement on July 28, 1999, and was the grantor of the trust.  Husband's brother was appointed as trustee and resides in the State of New York.  Currently, Wife is the primary beneficiary of the trust and their three children are the secondary beneficiaries.  The current corpus of the trust is insurance policies which were purchased with marital monies.  At trial, Husband testified that he created the trust because if anything happened to him he wanted to protect his family through the "rights and protections" of a trust because he believed Wife was fiscally irresponsible and did not want her to be a lump sum beneficiary.

{¶13}  Although Husband testified that he spoke to Wife about the trust and explained it to her, the trial court found Wife's testimony that the trust was created without her knowledge or consent to be credible.  In making this determination, the trial court noted that Wife testified she first became aware of the trust during the divorce proceedings and that Husband had never discussed the trust with her nor shared a copy of it with her.  Wife stated that Husband was the bookkeeper and bill payer during their marriage, prepared their tax returns, and made the vehicle purchasing decisions.  She further stated that Husband never discussed finances with her, did not want her to open any mail that contained financial matters, and became angry and told her she was ignorant and had no business sense when she asked about financial matters.  Additionally, this Court's own review of the record shows that Husband offered no evidence other than his own testimony to suggest that Wife had any knowledge of the trust.  Accordingly, we conclude that the trial court's finding was based on competent credible evidence.

{¶14}  The trial court ultimately concluded that the cash value of the life insurance policies within the trust were marital property because (1) the premiums were paid for with

marital monies and (2) despite the fact the policies were held in trust, Husband retained control over the policies and had taken loans against their cash value during the marriage, facts Husband does not dispute. A review of the trial testimony shows that Husband, a self-identified estate and trust attorney, stated that he personally drafted and executed the trust in 1999 and named his brother as the trustee. Although the trust was initially funded with term life insurance with no cash value, Husband later replaced those policies with permanent policies he admitted to purchasing with marital monies. He further testified that although Wife was the current primary beneficiary of the trust, once their divorce is finalized, pursuant to Ohio law, she will be deemed to have predeceased him and their three children will become the primary beneficiaries. Husband testified that he borrowed against the life insurance policies to fund both business and personal obligations, but that he did not discuss the loans with Wife. Finally, the trust requires that each beneficiary of the trust be informed of their right of withdrawal, and although Husband claimed to have letters signed by the beneficiaries of the trust declining their right to make withdrawals, no such letters were presented at trial.

{¶15} Upon review, we cannot say that this is an exceptional case where the trial court clearly lost its way and created a manifest miscarriage of justice when it determined, under the specific circumstances of this case, that the cash value of the life insurance policies held within the John Y. Kim Irrevocable Trust were marital property subject to division. *See Boreman*, 2002-Ohio-2320 at ¶ 10. If this Court were to hold otherwise, it would allow a spouse to unilaterally, and without the consent or knowledge of the other spouse, move martial money out of the reach of the other spouse by merely placing it in irrevocable trust.

{¶16} Husband next argues that the trial court lacked jurisdiction to direct the trustee of the John Y. Kim Irrevocable Trust to take any action pursuant to the trust because neither he nor

the trust were joined as parties pursuant to Civ.R. 75(B). A review of the decree, however, shows that the trial court did not order the trustee nor the trust itself to take any action. Rather, the trial court credited the cash value of all the life insurance policies within the trust to Husband when the court sought to equalize the distribution of marital property. Because a domestic relations court "has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matter[,]" and did not order the trust or trustee to take any action in this case, we conclude that Husband's contention is without merit. *Maloney v. Maloney*, 160 Ohio App.3d 209, 2005-Ohio-1368, ¶ 57 (2d Dist.), quoting R.C. 3105.011; *see* R.C. 3105.171(B).

{¶17} Husband's first assignment of error is overruled.

### Assignment of Error V

**The trial court erred in its designation of the Yamaha Piano as marital property.**

{¶18} In his fifth assignment of error, Husband contends that the trial court erred when it determined that a Yamaha Piano was marital property because the "[p]iano was a gift to him from his mother." We disagree.

{¶19} Pursuant to R.C. 3105.171(B), a court is required during divorce proceedings to determine what constitutes marital property and what constitutes separate property. "Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate." (Internal quotations and citations omitted.) *Suppan v. Suppan*, 9th Dist. Wayne No. 17AP0015, 2018-Ohio-2569, ¶ 21. "Separate property" includes "[a]ny gift of any real or personal property * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii).

{¶20} Following trial, the lower court determined that Husband had not proven by a preponderance of the evidence that the piano at issue was a gift to him from his mother.

"Because the determination of whether property is marital or separate is a fact-based determination, we review a trial court's decision under a manifest-weight-of-the-evidence standard." *Kolar*, 2018-Ohio-2559 at ¶ 30, citing *Morris*, 2006-Ohio-1560 at ¶ 23. Accordingly, we incorporate the manifest weight standard of review laid out in the previous assignment of error.

{¶21} In this case, both Husband and Wife testified that Husband's mother bought the piano. However, contrary to Husband's assertion on appeal that his mother purchased the piano for him, he specifically stated at trial: "I would like the piano *that my mother bought for my children*." (Emphasis added.) Additionally, when Wife was asked what the purpose of purchasing the piano was, she replied, "[f]or my daughter [W.] to start lessons. We did not have a piano before that." Notably, a review of the sales order introduced into evidence at trial lists the purchaser as "John Kim ([W.] – Daughter)."

{¶22} Based on the evidence presented at trial, we conclude that the trial court did not err when it determined that Husband had not proven that the piano was a gift from his mother. Husband's fifth assignment of error is overruled.

## Assignment of Error II

**The trial court erred in finding that [Husband] engaged in financial misconduct sufficient to justify a distributive award to the Wife, in addition to spousal support.**

{¶23} In his second assignment of error, Husband argues that the trial court erred in finding that he engaged in financial misconduct by (1) gifting $254,000 to his mother over the course of sixteen years; (2) dissipating $13,901.97 related to the sale of the parties' 2016 Porsche 911 GT3 RS; (3) dissipating $27,434 from the parties' 2014 joint income tax refund; and (4) dissipating $39,276.95 from a Symphony financial account.

{¶24} "A trial court is vested with broad discretion when fashioning a division of marital property." *Naylor v. Naylor*, 9th Dist. Summit Nos. 21758, 21881, 2004-Ohio-4452, ¶ 16. "When a spouse engages in financial misconduct, [R.C. 3105.171(E)(4)] provides the trial court with discretion to 'compensate the offended spouse with a distributive award or with a greater award of marital property.'" *Choi v. Choi*, 9th Dist. Summit No. 28568, 2018-Ohio-725, ¶ 22, quoting R.C. 3105.171(E)(4). An abuse of discretion implies the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶25} Financial misconduct under R.C. 3105.171(E)(4) "necessarily implicates wrongdoing such as one spouse's interference with the other's property rights or the offending spouse's profiting from the misconduct." *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 44. Thus, in the context of the statute, financial misconduct "requires 'some element of wrongful intent or scienter[.]" *Havrilla v. Havrilla*, 9th Dist. Summit No. 27064, 2014-Ohio-2747, ¶ 47, quoting *Orwick v. Orwick*, 7th Dist. Jefferson No. 04 JE 14, 2005-Ohio-5055, ¶ 25. In order to determine whether financial misconduct occurred, "a court must look to the reasons behind the questioned activity or the results of the activity and determine whether the wrongdoer profited from the activity or intentionally dissipated, destroyed, concealed, or fraudulently disposed of the other spouse's assets." *Bucalo v. Bucalo*, 9th Dist. Medina No. 05CA0011-M, 2005-Ohio-6319, ¶ 30. The party alleging the existence of financial misconduct bears the burden of proof. *Tustin* at ¶ 44.

{¶26} When reviewing whether a trial court erred in its finding regarding financial misconduct, this court applies the manifest weight of the evidence standard. *Palazzo v. Palazzo*,

9th Dist. Summit Nos. 27932, 27935, 2016-Ohio-3041, ¶ 11, citing *Tustin* at ¶ 43. Accordingly, we incorporate the manifest weight of the evidence standard as outlined above.

**Financial gifts to Husband's parents**

{¶27} The trial court found that Husband "engaged in financial misconduct towards [Wife] and the marital estate by dissipating, disposing of or concealing with his parents the sum of $254,000 in marital monies without [Wife]'s knowledge or consent." Husband argues on appeal that Wife's testimony that she was unaware of the payments is not supported by the evidence, and that even assuming she was unaware, she did not satisfy her burden of proving that Husband had sent the money with a wrongful intent. Husband does not dispute that he made financial gifts to his parents in the amount stated over the sixteen years prior to Wife's filing a complaint for divorce, but asserts that the evidence shows his intent was to honor a traditional Korean custom of gifting parents with money in times of financial success.

{¶28} "'Because financial misconduct involves some element of profit or interference with another's property rights, the time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter.'" *Downey v. Downey*, 9th Dist. Summit No. 23687, 2007-Ohio-6294, ¶ 17, quoting *Rinehart v. Rinehart*, 4th Dist. Gallia No. 96 CA 10, 1998 WL 282622, *12 (May 18, 1998). "'[I]f the time frame of the alleged misconduct does not establish scienter, there must be some other evidence that does establish it.'" *Choi*, 2018-Ohio-725 at ¶ 24, quoting *Orwick*, 2005-Ohio-5055 at ¶ 55.

{¶29} In this case, the trial court determined that Husband had engaged in financial misconduct by dissipating, disposing of, or concealing with his parents, $254,000 of marital monies based on the totality of the evidence presented. Relevant to this determination, the trial court found Wife's testimony that she was unaware of the payments to be credible. Contrary to

Husband's assertion on appeal, the trial court's finding was not entirely based on Wife's lack of knowledge. The trial court also found the purchase of certain real property by Husband's mother for his use in August 2016—nearly ten months after Wife filed her complaint for divorce—to be significant. The trial court noted that Husband testified that his mother wanted to purchase the property for him and that he signed the purchase agreement to remove the property from the market. Husband advised his mother to place the property in trust and thereafter drafted a revocable trust for her with his brother listed as trustee. The trust purchased the real property outright for $362,000. Although Husband stated that his parents had taken a reverse mortgage on their home to fund the trust, the court noted that no documents were introduced at trial to verify that claim. Husband subsequently executed a triple net lease with the trust to rent the property for $2,500 per month plus utilities pursuant to a lease agreement drafted by Husband's law clerk. Despite this agreement, the trial court found that Husband had paid $0 in rent to the trust.

{¶30} A review of the record shows that the trial court's findings are based on competent, credible evidence. As to Wife's lack of knowledge, Wife testified that she and Husband never discussed finances, and any time she asked him a question about finances, he would get angry, tell her she was ignorant and did not understand, and to trust him because he was a financial advisor. Regarding the purchase of the real property, Wife then testified that she believed the property was purchased with the money that Husband gave to his parents over the course of their marriage. The record contains no documentary evidence to substantiate Husband's testimony that his mother wanted to buy the house for him and used funds from a reverse mortgage on his parents' home to purchase the property through a revocable trust. Additionally, Husband testified that a benefit of the revocable trust was ease of probate

distribution, and implied that they chose the revocable trust because his parents wanted to ensure that all three of their children were treated equally. Husband contradicted this claim by acknowledging that his parents had not purchased a home for the use of either of his other siblings.

{¶31} Based on the foregoing, we cannot say that this is the exceptional case where the trial court clearly lost its way and created a manifest miscarriage of justice when it determined Husband engaged in financial misconduct related to the monetary gifts made to his parents. *See Palazzo*, 2016-Ohio-3041 at ¶ 10, citing *Tustin*, 2015-Ohio-3454 at ¶ 43 (defining wrongdoing as interference with the other party's property rights *or* profiting from the misconduct). We further conclude, therefore, that the trial court did not abuse its discretion by compensating wife with a distributive award based on its finding that Husband committed financial misconduct.

**Trial Court's Additional Findings of Financial Misconduct**

{¶32} The trial court also found that Husband had committed financial misconduct by dissipating $13,901.97 related to the sale of the parties' 2016 Porsche 911 GT3 RS, dissipating $27,434 from the parties' 2014 joint income tax refund, and dissipating $39,276.95 from a Symphony financial account. Although Husband testified that he used the funds at issue to pay marital debts or for expenses related to Symphony, the trial court determined that Husband did not offer any evidence to support those claims.

{¶33} On appeal, Husband contends that he did not dissipate these funds and that the trial court either overlooked or misunderstood the evidence presented at trial. In support of his arguments, however, Husband relies entirely on evidence outside the record on appeal. "An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority." *State v. Watson*, 9th Dist. Summit No. 24232,

2009-Ohio-330, ¶ 5, citing App.R. 16(A)(7). "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus; *see* App.R. 9.

{¶34} Because Husband has failed to cite to any evidence in the record, we cannot conclude that the trial court erred when it determined he dissipated the funds related to the sale of the Porsche, the 2014 joint income tax refund, or the Symphony financial account.

{¶35} Husband's second assignment of error is overruled.

### Assignment of Error III

**The trial court erred in disregarding stipulated expert testimony in its determination of [Husband]'s income available for spousal support purposes.**

{¶36} In his third assignment of error, Husband contends the trial court erred when it utilized his three year average income as the basis for calculating spousal support rather than the sum of his normalized owner compensation from Symphony and his average distributions from K&A. Husband argues that using his three-year average ignores stipulated expert testimony and constitutes an inequitable "double-dip" by using the same income stream for business valuation and income available for spousal support purposes.

{¶37} "Spousal support" is "any payment or payments to be made to a spouse or former spouse * * * that is both for sustenance and for support of the spouse or former spouse[,]" and "does not include any payment made to a spouse or former spouse * * * that is made as part of a division or distribution of property or a distributive award under [R.C. 3105.171]." R.C. 3105.18(A). A trial court must consider the factors set forth in R.C. 3105.18(C)(1)(a)-(n) "[i]n determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support[.]" R.C. 3105.18(C)(1).

One of the factors a trial court must consider is "[t]he income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under [R.C. 3105.171.]." R.C. 3105.18(C)(1)(a).

{¶38} "We review a trial court's award of spousal support for an abuse of discretion." *Stickney v. Stickney*, 9th Dist. Medina No. 14CA0099-M, 2016-Ohio-3379, ¶ 25 citing *Jeffery v. Jeffery*, 9th Dist. Wayne No. 06CA0046, 2007-Ohio-4482, ¶ 7. An abuse of discretion implies the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶39} "[A] double dip occurs when a court twice counts a *future income stream*—once in valuing the marital asset and once in deciding the economically superior spouse's ability to pay spousal support. It is the future income stream, not the marital asset, that is the subject of the doubling in the double dip." (Emphasis sic.) *Gallo v. Gallo*, 10th Dist. Franklin No. 14AP-179, 2015-Ohio-982, ¶ 18. The Tenth District reasoned in *Gallo* that R.C. 3105.18(C)(1)(a) precludes an outright prohibition of double dipping because the statute "requires a court to consider all sources of income, including income derived from a marital asset divided in the property distribution, in determining spousal support." *Id.* at ¶ 32. We agree. We further agree with the Tenth District that a trial court should, in the interest of equity, consider the impact of double dipping "[w]ith an eye to avoiding unfairness[.]" *Id.* at ¶ 33.

{¶40} At trial, Husband called Jason Bogniard as an expert witness. Mr. Bogniard testified that he was retained as a financial expert to render a business valuation, conclusion, and opinion of fair-market value of Symphony and of K&A, as well as determine the income for Husband available for spousal support. Using an income approach method, Mr. Bogniard stated that in his opinion the fair-market value of Symphony on December 31, 2016, was $1,000,000.

He further opined that based on the size of Symphony and the duties and efforts of Husband, Husband's normalized compensation from Symphony was $310,000. Mr. Bogniard then opined that using an adjusted net asset approach, the fair-market value of K&A was $25,000. Mr. Bogniard further determined that the three year average distributions paid to Husband from K&A was $105,876. Using this information, Mr. Bogniard concluded that Husband's normalized income available for support purposes was $415,876. Mr. Bogniard also testified that, based on the information and documentation he reviewed in this matter, Husband's actual three-year average income was $520,357.

{¶41} A review of the record shows that Wife did not offer any evidence controverting Mr. Bogniard's testimony. However, contrary to Husband's assertion on appeal, Wife did not stipulate to Mr. Bogniard's valuation of the businesses or his determination of Husband's income available for spousal support. The only stipulation apparent in the record is Wife's stipulation as to Mr. Bogniard's qualification as an expert. Accordingly, we determine that Husband's argument that the trial court ignored stipulated expert testimony has no merit.

{¶42} The trial court adopted Mr. Bogniard's valuation of both Symphony and K&A, and awarded both companies and their assets to Husband. In adopting Mr. Bogniard's valuations, the trial court noted that the distributions Husband received from K&A were not double dipped due to the valuation method used and that the valuation of Symphony included hard assets and cash on hand in addition to Husband's income. The trial court ultimately determined that under the facts of this case, equity did not require a double-dipping offset, and that Husband's three year average income of $520,357 should be used for purposes of determining his spousal support obligation. Although Husband contends that this created "a very inequitable result" under "the specific facts and circumstances of this case," Husband does not

point to any specific facts or circumstances and merely asserts the inherent unfairness of double dipping.

{¶43} In making the determination that Husband's three year average income should be utilized, the trial court stated as follows:

> In the case at hand, the parties have had a long term 20 year marriage. There is a huge disparity in the income between the parties[.] [Wife] earns $45,000 per year. [Husband] has three year average income of $520,357. [Wife] has experienced significant lost income capacity as a result of her marital responsibilities as a homemaker and child care giver. [Wife] was able to earn $78,489 in 2003 compared to $45,000 now. [Husband] is the sole owner of a closely held business. [Husband]'s salary and distributions each year are entirely within his discretion and control. During the marriage, it was from this salary and these distributions that [Husband] supported this family in an excellent upper class lifestyle. This is a lifestyle that [Wife] will never revisit once spousal support terminates.

In light of the foregoing—wherein the trial court cited specific circumstances overriding the inherent unfairness of double dipping in this case—we cannot conclude that the trial court's decision to use Husband's three-year average income was unreasonable, arbitrary, or unconscionable. *See Gallo*, 2015-Ohio-982, at ¶ 34 ("[A] trial court may determine that some circumstances, such as the disparity in income between the parties, override the unfairness in double dipping.")

{¶44} Husband's third assignment of error is overruled.

### Assignment of Error IV

**The trial court erred in awarding $35,000 of attorney fees to be paid by [Husband] to [Wife].**

{¶45} In his fourth assignment of error, Husband contends that the trial court erred in awarding attorney fees to Wife because the parties' behavior in this case was "equally acrimonious."

{¶46} Wife requested an award of attorney fees in the amount of $50,000 on the basis that she incurred significant attorney fees in order to litigate this matter, protect her interests, and force compliance with court orders. The parties stipulated that Wife owed her former attorney $70,000. The trial court then found that Wife owed her business valuation expert $24,500, and that she had incurred additional attorney fees and costs with her present attorney in the amount of $61,113.05, but had previously paid the sum of $25,000 leaving a balance due of $36,113.05. The trial court also found that Husband owed his business valuation expert $16,587.62, and had incurred attorney fees in the amount of $61,104, but had paid the sum of $33,722 leaving a balance of $27,382. The trial court ultimately found that an award of attorney fees to Wife in the amount of $35,000 to be equitable.

{¶47} Pursuant to R.C. 3105.73(A), "a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In making this determination, a court may consider any relevant factors the court deems appropriate, including the conduct of the parties. R.C. 3105.73(A). Such an award is reviewed for an abuse of discretion. *Tustin*, 2015-Ohio-3454, at ¶ 57.

{¶48} Husband contends that the trial court erred in awarding attorney fees to Wife because the parties' behavior in this case was "equally acrimonious." The trial court, however, was under no obligation to engage in any examination balancing of the parties' conduct and needed only to find that the award was equitable. *See McGrew v. McGrew*, 9th Dist. Summit No. 28310, 2017-Ohio-7854, ¶ 24; *see also* R.C. 3105.73(A). "'Because a court addresses an award of attorney fees through equitable considerations, a trial court properly can consider the entire spectrum of a party's actions, so long as those actions impinge upon the course of the

litigation.'" *Grosse v. Grosse*, 9th Dist. Summit No. 27159, 2014-Ohio-5642, ¶ 9, quoting *Padgett v. Padgett*, 10th Dist. Franklin No. 08AP-269, 2008-Ohio-6815, ¶ 17.

{¶49} In awarding Wife attorney fees, the trial court considered the following. The evidence presented at trial showed that Wife was "in the dark" as to the parties' financial circumstances prior to filing for divorce and her attorneys had to do significant discovery in order to determine the extent of the marital estate. The trial court also noted that as late as the first day of trial, Wife was still requesting statements for a few accounts which the trial court directed Husband to produce that day. Husband violated the trial court's restraining orders on three different occasions by liquidating assets without Wife's prior knowledge and consent, and did not provide the trial court with a satisfactory explanation of where the monies from the asset liquidation went. The trial court also considered Wife's testimony that Husband did not consistently make payments on the mortgage, taxes, homeowners insurance, or utilities for the parties' marital residence or lake home, nor did he consistently make payments for one of the parties' vehicles, repairs at the marital residence, or their children's medical bills. Husband was required to make these payments per the temporary order. Although Husband testified that he had a cash-flow crisis and could not pay these expenses with money he did not have, the trial court was skeptical of this testimony in light of several trips Husband took during that time period and the large amount of credit card expenses he had incurred and paid off.

{¶50} Based on the above circumstances, this Court concludes that the trial court was not unreasonable in awarding Wife attorney fees in the amount of $35,000.

{¶51} Husband's fourth assignment of error is overruled.

### Assignment of Error [VI]

**The [trial court] erred by awarding [Wife] attorneys' fees under R.C. 3105.73(B).**

**{¶52}** In his sixth assignment of error, Husband contends that the trial court erred in granting Wife attorney fees related to his amended motion to correct the appellate record. We disagree.

**{¶53}** After the record was submitted on appeal, Husband filed a motion to correct the record in the trial court pursuant to App.R. 9(E). Husband argued in his motion that through inadvertence or otherwise, portions of two trial exhibits admitted into evidence were omitted when the record was transmitted to this Court. Wife opposed Husband's motion, asserting that Husband was seeking to add new evidence to the record which was not presented at the time of trial. Following a hearing, the trial court denied Husband's motion.

**{¶54}** In the meantime, Wife filed a motion seeking attorney fees "due to the need for preparation and litigation" of Husband's motion to correct the record and stating that Wife did not believe that Husband had a good faith argument for correcting the record. Wife further stated that this belief was based on Husband modifying "the reasoning why certain documents were not submitted" in several pleadings and "even alleg[ing] that [Wife]'s counsel had taken some action to damage the record." Wife stated this lead her to believe Husband was "pursuing this motion and other motions in order to harass [Wife] and delay the proceedings." The trial court ultimately determined that "[g]iven [Husband]'s conduct" during the proceedings, "an award of attorney fees [was] equitable."

**{¶55}** Pursuant to R.C. 3105.73(B):

In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

{¶56} "Because a court addresses an award of attorney fees through equitable consideration, a trial court can consider the entire spectrum of a party's actions, so long as those actions impinge upon the course of the litigation." *Grosse*, 2014-Ohio-5642 at ¶ 9, quoting *Padgett*, 2008-Ohio-6815 at ¶ 17. R.C. 3105.73(B) grants a trial court broad discretion in determining attorney fees, and an award will not be disturbed on appeal absent a showing of a clear abuse of discretion. *Young v. Young*, 9th Dist. Wayne No. 16AP0016, 2017-Ohio-238, ¶ 28. An abuse of discretion implies a trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶57} On appeal, Husband first argues that the trial court abused its discretion in awarding attorney fees because his motion to correct the record had merit and the evidentiary hearing was ordered by the trial court. First, we note that although the trial court determined that Husband's motion was "not well taken and should be denied," the trial court did not award Wife attorneys' fees based on a finding that Husband's motion lacked merit. Rather, the trial court determined that an award of attorney fees was equitable.

{¶58} Regarding Husband's second argument, Husband has not pointed to, and this Court has not found, any legal support for the general notion that a trial court abuses its discretion when it awards attorney fees to a party for her counsels' appearance at a court-ordered hearing on the opposing party's motion. App.R. 9(E) provides, in part, "[i]f any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth." "Where a trial court receives and evaluates conflicting evidence regarding the state of the record, the

decision to correct or supplement the record pursuant to App.R. 9(E) rests upon the court's ability to weigh the evidence." *State v. Schiebel*, 55 Ohio St.3d 71 (1990), paragraph three of the syllabus.

{¶59} In this case, Husband's amended motion to correct the record contended that through inadvertence or otherwise, pages of specific exhibits admitted during trial were omitted when the record was submitted to this Court. Husband speculated that the exhibits may have been mishandled during or after trial or that a photocopying error had occurred. Wife opposed the motion, asserting that Husband was seeking to add new evidence into the record which was not presented at trial, and that Husband's representations in his motion were inconsistent with his representations concerning the same exhibits in his appellate brief. Following an informal conference, the trial court issued an agreed entry scheduling an evidentiary hearing "upon the written agreement of the parties[.]" Following the hearing, the trial court issued a journal entry determining that it was clear from the evidence that the exhibits submitted to this Court were indeed "the exhibits utilized by counsel during the divorce trial" and that Husband's testimony stating otherwise was "not accurate or truthful." The trial court also found that neither Wife nor her counsel had any contact with the exhibits subsequent to trial. Husband has also not explained, and we fail to see, why under these specific circumstances an award of attorney fees was an abuse of discretion.

{¶60} Husband next argues that the trial court abused its discretion in awarding attorney fees because Husband did not engage in any conduct *during the hearing* which would support an equitable award of attorneys' fees to Wife. However, in finding that an award of attorney fees was equitable based on Husband's conduct, the trial court did not limit its consideration solely to the hearing. The trial court also considered the following exhibits submitted by Wife in support

of her request for attorney fees: (1) Husband's motion for reconsideration filed in this Court, wherein Husband stated the exhibits were truncated "inadvertently or pursuant to technical difficulty or error in collection of exhibits by the court report or others[;]" (2) a copy of Husband's reply brief in his first appeal wherein he stated that "numerous pages were omitted (or removed) by [Wife] from the electronically submitted record of the court," and requested this Court to "correct the technical omissions (or intentional removal/withholding) by [Wife;]" (3) Husband's motion for correction of record filed in the trial court wherein Husband stated that the documents were properly admitted into evidence at trial but when they "were electronically transmitted to [this] Court by [Wife] or her counsel[,] significant pages were omitted[;]" (4) a transcript of the hearing on Husband's motion to correct the record wherein Wife's attorney stated he thought Husband had abandoned the allegation that his office tampered with the evidence, to which Husband's counsel stated, "We have not abandoned that, but proceed[;]" (5) a copy of an email wherein Husband informed Wife he had sued her attorney and that "[a]s for litigation, you haven't seen anything yet.  It's all just beginning and while I've purposely not named you as a defendant yet, you will most likely get pulled in."

{¶61}  Upon review of the record, we cannot say that the trial court's determination that an award of attorney fees to Wife was equitable based on Husband's conduct in this case was unreasonable, arbitrary, or unconscionable.  The trial court could have reasonably concluded that Husband's actions in filing in several motions asserting that certain trial exhibits were either mistakenly or purposefully truncated when the record was submitted to this Court—an assertion the trial court found inaccurate and untruthful—caused Wife to incur attorney fees to defend her interests.

{¶62} Finally, Husband contends that the trial court abused its discretion when it awarded attorney "fees for two attorneys, both [Wife]'s trial and appellate counsel, who were present during the court-ordered evidentiary hearing[.]" Specifically, Husband argues that the billing itemization filed by Wife's counsel "was not sufficiently detailed" to allow the trial court to determine the appropriate amount of fees to be awarded because it "lacked any indication of the date and/or time in relation to each itemized entry."

{¶63} "'[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145 (1991), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A "trial court must determine the reasonableness of the time spent on the matter and the reasonableness of the hourly rate." *Miller v. Miller*, 9th Dist. Wayne No. 09CA0025, 2010-Ohio-1251, ¶ 32. A trial court "may rely on its own knowledge and experience to determine the reasonableness of the amount claimed." *Long v. Long*, 10th Dist. Franklin No. 11AP-510, 2012-Ohio-6254, ¶ 20.

{¶64} Although Wife's attorney stated at the fee hearing that exact dates and times could be provided, the trial court determined "that there was sufficient detail on the fee bill for the court to decipher the services provided, the hourly rate and the number of hours expended by each attorney" and that the hourly rates and number of hours expended were reasonable under the circumstances. A review of the itemization shows a breakdown by attorney, service provided, time expended, and individual attorney rates, before providing a total fee for a specific service provided. Wife's trial counsel also submitted an affidavit attesting to the reasonableness of his fees based upon the factors outlined in the Rules of Professional Conduct. Considering the

information available in the itemization and the affidavit, we cannot say that the trial court's determination was unreasonable, arbitrary, or unconscionable.

{¶65} Husband's sixth assignment of error is overruled.

**Assignment of Error [VII]**

**The [trial court] erred by awarding [Wife] attorneys' fees under R.C. 2323.51.**

{¶66} In his seventh assignment of error, Husband contends that the trial court erred in granting Wife attorney fees related to his motion to correct the appellate record pursuant to R.C. 2323.51. However, our review of the record shows that the trial court did not award attorney fees pursuant to R.C. 2323.51. Rather, the trial court determined that any award of attorney fees was equitable pursuant to R.C. 3105.73(B). Consequently, we determine that Husband's seventh assignment of error lacks merit, and is, therefore, overruled.

III.

{¶67} Husband's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                  _____

                                  JULIE A. SCHAFER
                                  FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

BRADLEY J. BARMEN, Attorney at Law, for Appellant.

RANDAL A. LOWRY and ADAM R. MORRIS, Attorneys at Law, for Appellee.

KENNETH GIBSON, Attorney at Law, for Appellee.