[Cite as *Louden v. Louden*, 2026-Ohio-2015.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

JEREMY LOUDEN

    Appellee

v.

ELIZABETH LOUDEN

    Appellant

C.A. Nos.    25CA012152
                 25CA012261

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    21DU090166

DECISION AND JOURNAL ENTRY

Dated: May 29, 2026

---

STEVENSON, Judge.

{¶1} Defendant-Appellant Jeremy Louden ("Husband") appeals from the judgment of the Lorain County Common Pleas Court, Domestic Relations Division. This Court affirms in part, reverses in part, and remands.

I.

{¶2} Husband and Plaintiff-Appellee Elizabeth Louden ("Wife") were married in August 2008, and three children were born as issue of the marriage. Wife filed for divorce in December 2021. The court issued temporary orders directing the parties to pay their own living expenses and ordering Husband to pay the mortgage, utilities, homeowner's insurance, and the children's health care, school fees, and extracurricular activities expenses. Husband was also ordered to provide clothes for the children and pay wife $100 per week to cover the children's food expenses which was later modified to $150 per week.

{¶3}     The matter proceeded to a two-day trial.  At the conclusion of the trial, it was agreed between counsel and the court that the parties would forego oral closing arguments and could file written proposed findings of facts and conclusions of law/judgment entries within 30 days. Wife filed proposed findings of fact and conclusions of law, but Husband did not.

{¶4}     The trial court issued a Judgment Entry/Decree of Divorce ("Decree") on July 10, 2024.  Attached to the Decree as Exhibit A was a shared parenting plan.  On August 7, 2024, Husband moved for a new trial under Civ.R. 59(A).  On August 9, 2024, Husband appealed to this Court from the Decree.  On August 12, 2024, Husband filed a motion for stay pursuant to Civ.R. 62(A) and to modify support under Civ.R. 75(H) in the trial court.  Wife moved to dismiss, or in the alternative, to deny Husband's motion for new trial. Wife also moved for attorney fees and opposed Husband's motion for stay.  This Court stayed Husband's appeal and remanded the matter to the trial court for a ruling on Husband's motion for new trial.

{¶5}     In February 2025, the trial court held a hearing on Husband's motion for new trial, motion for stay, and for modification of support as well as Wife's motion for attorney fees. On March 26, 2025, the trial court denied all four motions. Upon receiving notice of the trial court's ruling, this Court lifted the stay and ordered that the appeal could proceed.  On April 24, 2025, Husband filed a new notice of appeal from both the Decree and the March 26, 2025, order denying his motion for new trial, motion for stay, and motion for modification of support.  This Court consolidated the two appeals.

{¶6}     Husband asserts thirteen assignments of error for our review.  We will review them out of order and in a consolidated fashion for ease of analysis.

II.

{¶7}     Husband's first three assignments of error address the order in the Decree that the funds held in Wife's counsel's IOLTA from the sale of the marital residence be divided equally between the parties, but that Husband's portion was to be offset by $53,071.51 owed to Wife.  The $53,071.51 offset included "unpaid temporary orders ($5,277.65), [the] value of savings account transfers ($15,739.59), [and] money with family members ($5,000)[.]" The offset also included Wife's attorney fees in the amount of $34,418.00 which will be addressed under Husband's fourth and fifth assignments of error.

{¶8}     Before addressing the merits of the first three assignments of error, we note as a threshold matter that neither party disputes the accuracy of the values found by the trial court for the unpaid temporary orders, savings transfers, and money with family members for purposes of the offset. We point this out because there is a discrepancy between those values and the values listed for those items in other sections of the Decree and in the testimony at trial. As neither party contests these values for purposes of Husband's first, second, and third assignments of error, this Court will likewise presume the correctness of the values for purposes of our analysis here.

**ASSIGNMENT OF ERROR I.**

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOCATING $5,277.65 TO [WIFE] FOR "UNPAID TEMPORARY ORDERS" WHILE NEGLECTING TO CREDIT [HUSBAND] FOR EXPENSES PAID OUTSIDE OF THE SCOPE OF THE TEMPORARY ORDER.**

{¶9}     Husband argues that the trial court's award misapplied the temporary orders and states the following in support: Wife did not seek reimbursement from Husband for these expenses and was doing so for the first time at trial, thus depriving him of proper notice of the alleged expenses; Wife produced no receipts, itemization, or linkage to the expenses encompassed by the

temporary orders; the largest piece of Wife's claim was a preschool tuition expense that Wife improperly categorized as "school fees" for the parties' youngest child, yet Wife did not consult Husband on the child's preschool attendance; "school fees" under the temporary orders does not include preschool tuition; Wife's claim included repayment for clothing, but Husband provided clothing for the children when they visited his home as ordered; and Husband paid substantial expenses not required by the temporary orders, such as Wife's car insurance and the internet bill.

{¶10} "When reviewing a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard." *La Spisa v. La Spisa*, 2023-Ohio-3467, ¶ 12 (8th Dist). An abuse of discretion "connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from substituting its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶11} As for the temporary support arrears, Husband's argument is essentially that the trial court abused its discretion in concluding that Husband owes Wife $5,277.65 because Wife did not properly show that the expenses for which she sought payment were Husband's responsibility under the temporary orders. Regarding Husband's claim that Wife did not properly notify him of the incurred expenses, the temporary order does not contain any language requiring Wife to formally request that Husband reimburse her by presenting him with receipts, bills, etc. linked to the expenses in the temporary order as a condition of payment. Furthermore, Wife testified on the first day of trial regarding the expenses for which she sought reimbursement and presented her own written itemization in the form of a spreadsheet as evidence. The court admitted the spreadsheet into evidence without objection from Husband. On the second day of trial, almost five months later,

Husband admitted on cross-examination that he was notified of the expenses during Wife's testimony on day one of trial, but that he had not paid her, nor did he offer a reason for his failure to do so.

{¶12} As for Husband's argument that "school fees" do not include preschool tuition, his main objection was that Wife had not consulted him on the minor child's enrollment in preschool or the costs associated with it. He also argues that "school fees" are limited to items such as incidentals – books, extracurriculars, lab and technology fees - and that the Ohio Revised Code's definition of compulsory school age does not include preschool. Husband has not shown that under the temporary orders his consent to the children's school enrollment was a condition of his payment of any of their school fees. Nor did the temporary orders exclude preschool fees from "school fees" even though it was clear that the parties had a child of that age. Husband admitted that he knew the child began preschool, had no objection to it, and did not dispute that there is a tuition cost associated with preschool. Also, during his testimony he referred to the child's preschool tuition as "preschool fees" at least twice, thus undermining his argument on appeal that preschool tuition is not a "school fee."

{¶13} Regarding the children's clothing, Husband's argument is that he complied with the court's order to "provide clothes for the minor children" by supplying them with clothes during their visits with him, but that he was not required to reimburse Wife for clothes that she bought. The temporary orders do not limit Husband's provision of clothing for the children to their companionship time with him.

{¶14} Regarding Husband's payment of expenses not required by the temporary orders, at no time did Husband ever allege that Wife asked him to pay those additional expenses, nor did Wife testify that she requested him to do so. Therefore, we can only conclude that those payments

were made voluntarily and are thus not appropriate to be deducted from the court ordered temporary payments.

{¶15} Based on the foregoing, we find no abuse of discretion in the court's determination that Husband owes Wife $5,277.65 in temporary support arrears and in allocating that amount to her. Husband's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II.

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOCATING $15,739.59 TO [WIFE] FOR "SAVING ACCOUNT TRANSFERS[.]"**

### ASSIGNMENT OF ERROR NO. III.

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOCATING TO [WIFE] AN ADDITIONAL $5,000.00 FOR FUNDS SENT TO FAMILY MEMBERS WHEN SAME WAS TESTIFIED TO AS A SAVINGS ACCOUNT TRANSFER, THEREFORE, PENALIZING [HUSBAND] DUALLY.**

{¶16} In his second and third assignments of error, although Husband frames his arguments under an abuse of discretion analysis, his arguments actually sound in manifest weight as he challenges the court's finding that his evidence was not credible with respect to the savings transfers and funds sent to a family member and that Wife's evidence was credible. In reviewing the manifest weight of the evidence, we "must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice." *Boreman v. Boreman*, 2002-Ohio-2320, ¶ 10 (9th Dist.). In so doing, "we must always be mindful of the presumption in favor of the finder of fact." *Kim v. Kim,* 2020-Ohio-22, ¶ 10 (9th Dist.). "Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *Boreman* at ¶ 10.

**SAVINGS ACCOUNT TRANSFERS**

{¶17}    Turning first to the issue of the savings account transfers, the trial court found that:

> [a]s of October 2021, the marital savings equaled $31,476.11. The majority of these funds were held in Capital One x5952 with a balance of $23,027.14.  The parties also accumulated $8,451.97 in a Barclays Savings account ending in x8240. [Wife's] marital portion of the savings equals $15,739.56.

{¶18}    Husband argues that the trial court erred in ordering Husband to pay Wife $15,739.56 as her portion of the savings for the following reasons: (1) the majority of the savings balance that the trial court relied on was traceable to Wife's Texas Pension that was liquidated to replenish funds spent on the down payment for the North Ridgeville house, and thus, was not actual savings; (2) Husband provided a realistic explanation for the savings transfers, most of which predate Wife's filing of her complaint for divorce; and (3) the remaining funds from the savings accounts were used to pay marital expenses.

{¶19}    The trial court dedicated the majority of three pages of the Decree to detailed findings as to why it did not find Husband credible. Regarding Husband's use of the savings accounts and explanation of the various transfers, the court found that:

> [Husband] testified that he unilaterally liquidated the marital savings at Capital One and Barclays for the need and purpose "to pay marital expenses and temporary support."
>
>          . . .
>
> On October 6, 2021, [Husband] transferred $18,000.00 from the joint Capital One to the Barclay's account in his name only, making the Barclay's account value $21,459.49 and the Capital One value $3,753.96. [Husband] then opened a new Key Bank Checking account in his name only.  He then, through various transfers totaling $22,800.00 diminished [the] Barclay's account to a value of $2,068.92. In total, $24,400.00 was deposited into the Key Bank account from October 2021-December 2021.
>
> [Husband] testified that he needed to preserve these funds from [Wife's] 'wasteful spending'. [Husband] was unable to illustrate any such waste by [Wife] to this Court.  He, however, proceeded to liquidate all savings from Capital One and

Barclays. [Husband]'s accounting of spending down marital savings on regular monthly expenses, as opposed to utilizing his earned income.

. . .

[Wife] testified that she had no idea that [Husband] liquidated her Texas Teachers Retirement account.

{¶20} We have reviewed the transcript of the hearing and conclude that the trial court's findings as to the character and nature of the various savings transfers are not against the manifest weight of the evidence. Husband did not dispute at trial that the Capital One and Barclays savings accounts had a combined total balance of $31,479.61 as of September 1, 2021. He testified that in October 2021 he transferred $18,000 from the Capital One to the Barclays account, which was in his name only, leaving $3,753.96 in Capital One as of October 1, 2021; that he thereafter withdrew $22,800 from Barclays, leaving a balance of $2,068.92 in that account; that he transferred a total of $24,000 from the two savings accounts, Capital One and Barclays, to his personal Key Bank checking that Wife had no access to; and that as far as any remaining funds left in the savings accounts after the $24,000 transfer, he "couldn't tell [the court] exactly" where the money went. Although he claims that he used the money transferred to his Key Bank checking to pay marital expenses that Wife incurred through "sudden overspending," his Exhibit I, which he offered as evidence of the same, was not admitted into evidence, and thus, cannot be relied upon for purposes of this appeal. Beyond his Exhibit I, he does not attempt to explain what happened to the funds he withdrew from these accounts.

{¶21} Husband also admitted that he signed Wife's name to the documents required to liquidate her Texas Pension and withdrew the funds himself. Although he claims Wife agreed to that, Wife testified that Husband withdrew the Texas Pension without her knowledge, and she only later discovered that he used those funds to replenish the Capital One savings spent on the

downpayment for the North Ridgeville house. Husband seems to be arguing that the Barclays and Capital One accounts did not actually represent "savings" because he had to deplete Wife's Texas Pension to replenish them. However, the fact that the funds were transferred from one account to another and used to make a large payment does not somehow change their original character as the parties' savings. Moreover, the court found Husband not credible and Wife credible as to Wife's lack of knowledge of Husband's depletion of her Texas Pension. As the trier of fact, the trial court was in the best position to determine the credibility of witnesses and to resolve any conflicts in the evidence. *State v. Rivera*, 2023-Ohio-1788, ¶ 29 (9th Dist.).

## CASH AT BROTHER'S HOUSE

{¶22} Next, regarding the cash at Husband's brother's house, Husband argues that the court's labeling of the cash as "money with family members" was a mischaracterization that double counts the same pool of savings already used to calculate the $15,739.59 savings transfer equalizer. In support, he references his own testimony on cross-examination where he explained that the cash was withdrawn from the parties' savings account, transferred to his Key Bank personal checking account, then subsequently withdrawn and stored in a safety deposit box at his brother's house. Husband also disputes the court's finding that he "never disclosed the whereabouts of those monies[.]" Husband maintains that his testimony proves that he openly disclosed the source and location of the cash and did not attempt to conceal it.

{¶23} Upon cross-examination, Husband affirmed the attestation in his Affidavit of Property that he had cash at his brother's house as of December 19, 2021. Husband testified that the "[cash] would have been money that moved from [savings] into the Key [Bank account], and I believe it was subsequently withdrawn and put [at his brother's house]." Husband was asked to identify in the statements from the parties' savings at either Barclays or Capital One where the cash

was withdrawn. However, Husband could not identify a withdrawal/transfer that represented this cash, nor did he ever produce a Key Bank statement reflecting a transfer/deposit of this cash and subsequent withdrawal from that account. When pressed on whether he really withdrew the money in cash, he said "I can't remember. It's possible, but I couldn't - - I couldn't accurately state right now" which contradicts his testimony moments earlier that he withdrew the money and put it at his brother's house in cash. In short, Husband could not trace the cash at his brother's house to the parties' savings account which is where he claimed the money came from. Thus, his argument that the cash at his brother's house represented a double counting of the parties' savings is not supported by his testimony as he alleged. The court concluded that the cash likely came from Husband's paychecks from Kemper that he was cashing rather than depositing so that he could operate in cash and not account for it. This conclusion is supported by Husband's testimony about the Kemper checks. When asked on cross-examination "but because there is no direct deposit, we have no idea where your payroll went, right?" Husband answered "yes."

{¶24} Based on the foregoing, we disagree with Husband that the court lost its way in concluding that Wife should be allocated $5,000 for money with Husband's brother and $15,739.56 for savings transfers. As the trier of fact, it was the court's role to assess the credibility of the parties' testimony and evidence and resolve any conflicts in the evidence. *Boreman*, 2002-Ohio-2320, at ¶ 10 (9th Dist.). There was competent, credible evidence to support its determination that those funds were properly allocated to Wife. Husband's second and third assignments of error are overruled.

## ASSIGNMENT OF ERROR IV.

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT [HUSBAND] COMMITTED FINANCIAL MISCONDUCT[.]**

## ASSIGNMENT OF ERROR V.

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING $34,418.00 (THE ENTIRETY OF [WIFE'S] ATTORNEY FEES EXCLUDING TRIAL TIME) TO HER AT TRIAL WITHOUT SUFFICIENT BASIS.**

{¶25} The court concluded as follows regarding Husband's financial misconduct and its consideration of that misconduct in awarding attorney fees to Wife:

> testimony was placed on the record concerning [Husband's] evasive behavior and withholding information, failure to present requested discovery. Counsel [for Wife] spent several hours tracing the marital savings, attempting to account for the income received in paper checks that were cashed, and tracing cryptocurrency through a subpoena response. This extraordinary expenditure of hours was caused by [Husband's] methodical hiding of assets and willful failure to simply respond to the discovery requests. As such, [Wife] should be awarded attorney fees for the extra attorney time and expense caused by [Husband's] non-compliance.
>
> Ohio R.C. 3105.73 states, in an action for divorce . . . a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income . . . the conduct of the parties, and any other relevant factors the court deems appropriate.
>
> Here, [Wife] has significantly less income available for attorney fees than [Husband] due to their respective incomes. Additionally, as discussed above in the Financial Misconduct section of this order, [Husband] has acted in bad faith to hide marital assets and make it difficult to ascertain his income and the assets within the marital estate, causing extraordinary attorney time. Attorney fees can be awarded when authorized by statue or upon "a finding of conduct which amounts to bad faith." *Vance v. Roedersheimer*, 64 Ohio St.3d 552 [] (1992).
>
> . . . it is equitable for this Court to award [Wife] $34,418.00 in attorney fees, paid by [Husband], th[r]ough his half of the real estate proceeds held in escrow.

{¶26} Regarding Husband's bad faith actions that the court "discussed above in the Financial Misconduct section of this order," we have already outlined some of those actions under

the second and third assignments of error regarding the savings transfers and money kept at Husband's brother's house. In addition, the court made other detailed findings about Husband's intentional actions that established financial misconduct, namely his "'in cash' only" system, *i.e.,* his specific election to receive paper payroll checks from Kemper rather than deposit them and failure to account for the whereabouts of the cash; Husband's failure to produce his 2021 and 2022 tax returns until the court ordered him to produce them during a break at trial; Husband's failure to prove Wife's allegedly wasteful spending which was his justification for keeping a personal checking account for payment of marital expenses and operating in cash; and Husband's routinely signing Wife's name on official documents without her knowledge and consent, including but not limited to tax returns and retirement forms.

{¶27} We have said this regarding financial misconduct:

> For the trial court to find the requisite financial misconduct it must conduct a two-pronged analysis. The trial court must find (1) a wrongdoing by one spouse that interferes with the other spouse's property rights and (2) that the wrongdoing results in profit to the wrongdoer "*or* stems from an intentional act meant to defeat the other spouse's distribution of assets."

(Emphasis added.) *Hamrick v. Hamrick*, 2024-Ohio-2517, ¶ 20 (9th Dist.), quoting *Bucalo v. Bucalo*, 2005-Ohio-6319, ¶ 30 (9th Dist.).

> Financial misconduct under R.C. 3105.171(E)(4) necessarily implicates wrongdoing *such as one spouse's interference with the other's property rights or the offending spouse's profiting from the misconduct.* . . . In order to determine whether financial misconduct occurred, a court must look to the reasons behind the questioned activity or the results of the activity and determine *whether the wrongdoer profited from the activity or intentionally dissipated, destroyed, concealed, or fraudulently disposed of the other spouse's assets.* The party alleging the existence of financial misconduct bears the burden of proof.

(Emphasis added) (Internal citations and quotations omitted.) *Kim,* 2020-Ohio-22, at ¶ 25 (9th Dist.).

{¶28}    Here, Husband does not contest that Wife incurred $34,418 in attorney fees and that those fees were reasonable and necessary.  He argues that the trial court's findings that he committed financial misconduct are not supported by the record, and in turn, the award of attorney fees was not justified nor equitable under R.C. 3105.73.  He argues that he did not profit from the alleged financial misconduct nor wrongfully failed to disclose or dissipate any funds or property.

{¶29}    "When reviewing whether a trial court erred in its finding regarding financial misconduct, this court applies the manifest weight of the evidence standard." *Kim* at ¶ 26. We incorporate by reference the manifest weight standard established above.

{¶30}    We have reviewed the record and conclude that the trial court's finding that Husband's behavior constituted financial misconduct does not weigh heavily in favor of Husband, the party seeking reversal in this case. *Boreman,* 2002-Ohio-2320, at ¶10 (9th Dist.). While Husband pointed to his own testimony and the allegedly plausible explanations for his actions, the trial court did not find him credible and found that he intentionally took steps to conceal assets and made it difficult for Wife to trace his withdrawals and expenditures. The court gave a thorough explanation as to why it did not find him credible and that he dissipated and concealed assets.  The court's finding that Husband lacked credibility and committed financial misconduct was based on his inconsistent and unresponsive testimony; his ambiguity in identifying and tracing assets; his failure to respond to Wife's discovery requests and the additional work that it caused Wife's counsel; his inability to provide evidence of Wife's allegedly wasteful spending; his liquidation of the parties' savings accounts and unknown whereabouts of those monies; his "cash only" system of receiving Kemper payroll checks and inability to account for it; his safekeeping of cash at his brother's house; his failure to produce his 2021 and 2022 tax returns; his intentional withholding of

Wife's retirement account statements and liquidation of her Texas Pension without her knowledge and permission; and his routinely signing her name on official documents.

**{¶31}** As the trier of fact, the trial court was in the best position to make that credibility determination and to believe "all, part, or none" of his testimony. *Prince v. Jordan*, 2004-Ohio-7184, ¶ 35 (9th Dist.). All of the court's findings are supported by the testimony and evidence. On this record, we cannot say that the court's conclusion that Husband lacked credibility and committed financial misconduct is against the manifest weight of the evidence. Husband's actions, taken together with his lack of credibility, constitutes competent, credible evidence of wrongdoing intended to interfere with Wife's property rights/distribution of assets and to dissipate/conceal her portion of the assets. *Hamrick,* 2024-Ohio-2517 at ¶ 20 (9th Dist.); *Kim* at ¶ 25.

**{¶32}** Turning to the court's award of attorney fees, Husband argues that the court abused its discretion in awarding Wife the entirety of her fees because the record shows: (1) neither party filed a motion to compel and no sanctions were imposed; (2) Wife was also guilty of discovery failures; and (3) a wholesale award of the entire redacted fee bill without segregation of time attributable to any proven noncompliance. Husband also argues that because the court equalized the parties' incomes through its award of child and spousal support, Husband was not in a superior financial position, and therefore, its conclusion that Wife has significantly less income available for attorney fees is not true. He maintains that the court's award to Wife was merely "punitive and untethered to demonstrable discovery issues or one-sided misconduct." We disagree with Husband.

**{¶33}** This court reviews an award of attorney fees under R.C. 3105.73 for an abuse of discretion. *Kim* at ¶ 56. We incorporate the abuse of discretion standard established above. "Because a court addresses an award of attorney fees through equitable considerations, a trial court

properly can consider the entire spectrum of a party's actions, so long as those actions impinge upon the course of the litigation." *Padgett v. Padgett*, 2008-Ohio-6815, ¶ 17 (9th Dist.)

{¶34} First, Husband does not point to any authorities supporting his argument that to qualify as an official discovery dispute, one of the parties is required to file a motion to compel. In this case, certain of Husband's discovery failures were brought to the court's attention during trial and the trial judge addressed them by requiring Husband to divulge the missing information during a break. Other failures were elicited and discussed during the parties' testimonies. While Wife did not formally move to compel discovery, those matters were nonetheless discovery disputes. Additionally, the basis of the court's attorney fee award was not limited to Husband's failure to respond to discovery and the resulting additional attorney hours expended by Wife's counsel. Rather, as previously discussed, the award of fees was based on multiple actions or inactions by Husband as set forth in detail in the Decree, including but not limited to discovery issues. The court specifically stated that "*each* of these deliberate actions or inactions has been taken into consideration when this court rules on . . . *additional attorney fees* this behavior caused[.]" (Emphasis added.) The trial court's lengthy findings considered "the entire spectrum of [Husband's] actions" and found that collectively they constituted Husband's bad faith and financial misconduct and "impinge[d] on the course of the litigation." *Padgett* at ¶ 17. Furthermore, R.C. 3105.73 specifies that the court may award "*all* . . . of reasonable attorney fees" to a party if it deems the award equitable. (Emphasis added.) The statute does not require the court to parcel out a portion of the fees relative to the attorney's time spent on the misconduct. The overriding consideration is what is equitable. *Padgett* at ¶ 17.

{¶35} Furthermore, while Husband asserts that the court equalized the parties' incomes, he does not direct this Court's attention to where in the record we could locate this alleged

equalization of incomes. *See* App. R. 16(A)(7) (appellant's brief must include "reasons in support of the contentions, with citations to the . . . parts of the record on which appellant relies . . . .") The child support worksheet does not reflect that the parties' adjusted gross incomes are equal after payment of spousal support, health insurance, and childcare, but that calculation is not intended to account for all the parties' expenses, and therefore, would not accurately reflect whether the court equalized the parties' incomes.  Lastly, it is not necessarily an abuse of discretion for the court to equalize the parties' assets and then award attorney fees for financial misconduct from those equalized assets. Attorney fees awarded for financial misconduct are not a portion of the property division and are imposed to specifically compensate a party for the opposing party's bad faith actions.

{¶36}    Accordingly, based on the foregoing, the trial court's finding that Husband committed financial misconduct was not against the manifest weight of the evidence and it did not abuse its discretion in awarding the entirety of Wife's attorney fees to be paid by Husband. Husband's fourth and fifth assignments of error are overruled.

**ASSIGNMENT OF ERROR VI.**

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS ORDER OF CHILD SUPPORT[.]**

{¶37}    The trial court ordered Husband to pay $1,302.47 per month in child support ($1,246.84 support plus $44.63 cash medical).  Husband argues that the court abused its discretion because it used the incorrect income for Wife; includes an unverified childcare expense that was never going to be incurred by Wife; includes incorrect health insurance figures; and limited Husband's deviation to a 90 overnight deviation despite having 177 overnights. We disagree with Husband.

{¶38} Generally, we review matters involving child support under an abuse of discretion standard. *Varner v. Varner*, 2007-Ohio-675, ¶ 6 (9th Dist.). As Husband is contesting the trial court's finding regarding Wife's income, we must determine whether that finding is supported by competent, credible evidence. *Falah v. Falah*, 2017-Ohio-1087, ¶ 8 (9th Dist.)

{¶39} The guideline worksheet attached to the court's child support order was calculated using $41,161.38 for Wife's income. Husband contends that her salary is actually $50,000 and cites to a portion of Wife's testimony wherein she stated that "[i]t may be closer to 50 [thousand]." Wife's W-2, which was admitted into evidence, shows annual income of $41,161.38. Thus, the court's utilization of $41,161.38 for Wife's income was supported by competent, credible evidence. That the court favored an official tax form as proof of Wife's income over her recollection at trial was part and parcel of its role, as the trier of fact, to resolve any conflicts in the evidence. *Rivera*, 2023-Ohio-1788, at ¶ 29 (9th Dist.).

{¶40} The guideline worksheet, line 20a, reflects $4,040.00 for Wife's childcare expense. Husband argues that the order is effective as of August 1, 2024, after the parties' youngest child entered kindergarten and would no longer be incurring childcare expenses, and thus, the order does not reflect actual childcare expenses. However, at the time of trial, the minor child was in preschool and incurred childcare costs as established by Wife's testimony and her itemization of the children's expenses owed under the temporary orders. The court did not err by including actual expenses Wife was incurring at the time of trial in the child support calculations. Husband can move for a modification of support if there is a change in childcare costs in the future.

{¶41} Husband argues that his health care premiums are understated on the guideline worksheet. Line 10b of the worksheet shows $4,260.00 annually for Husband's out-of-pocket health insurance premiums. Husband testified that his annual health care premium is $8,711.30 as

reflected on his Kemper pay stub. However, his Kemper pay stub shows that he does not pay health insurance premiums, but rather, makes a monthly health savings account contribution in the amount of $335.05. Husband's testimony was that this contribution was for himself as well as the children. "'The purpose of child support is to meet the needs of a minor child.'" *Carnes v. Kemp*, 2004-Ohio-7107, ¶ 10, quoting *Park v. Ambrose,* 85 Ohio App.3d 179, 183, fn.1 (4th Dist. 1993). Under R.C. 3119.30(E), a child support order requires the court to consider only the cost of health insurance coverage "for a child subject to an order." Consistent with that requirement, the shared parenting plan adopted by the trial court states under "Health Insurance" that "[Husband] shall continue to maintain health insurance *for the children* and shall be designated as the health insurance obligor." (Emphasis added.)

{¶42}     Husband did not present any evidence as to what portion of his health savings contribution or any expenses paid out of that contribution were "for the children." Husband's affidavit of income and expenses reflects total monthly health care costs of $425, which if annualized, would be $5,100. However, his affidavit does not specify if any of portion of these costs is for the children. Neither the Decree nor the shared parenting plan include a specific finding for Husband's health care premiums for the children other than listing $4,260.00 as the value on line 10b of the worksheet. Husband has not met his burden to show how $4,260.00 constitutes an abuse of discretion when he did not present any evidence to assist the court in determining what, if any, portion was allocated to the children.

{¶43}     Regarding Husband's last argument, the trial court granted Husband a 10% deviation for his 90 plus overnights with the children. However, while the trial court acknowledged that Husband had more than 147 overnights per year under the shared parenting plan, it declined to grant him an additional deviation because:

the court does not find it in the best interest [of the minor children] to apply any further deviation based on the schedule, due to co-habitation benefits [Husband] is receiving. Further based on the standard of living the children are accustomed [to] as the parties have a large disparity in income.

{¶44} Husband argues that the court did not consider any cohabitation benefits that Wife was also receiving. He further argues that his cohabitation benefits were minimal and the sharing of expenses limited. He also submits that he has 177 overnights under the shared parenting plan, which he believes is significant, and that the court's "standard of living" rationale is undermined by the parties' testimonies that they lived frugally.

{¶45} Under R.C. 3119.231(B), "[i]f court-ordered parenting time is equal to or exceeds one hundred forty-seven overnights per year, and the court does not grant a deviation . . . it shall specify in the order the facts that are the basis for the court's decision." The court's decision whether to deviate from the child support guidelines and worksheet is discretionary and will not be reversed absent an abuse of discretion. *Hattenbach v. Watson*, 2016-Ohio-5648, ¶ 14 (2d Dist.). We incorporate by reference the abuse of discretion standard utilized above.

{¶46} Here, as set forth above, the trial court specified the "facts that [were] the basis for [its] decision" as required by R.C. 3119.231(B). Based on our review of the record, those facts are supported by competent, credible evidence. Husband's girlfriend owned the home where he resided and he paid rent to her in an amount that was slightly over half the mortgage payment, some utilities, and his children's food expenses. Husband's income is over twice that of Wife's. If Husband had wanted the court to consider any cohabitation benefits that Wife was receiving, he could have inquired of her on that subject during cross-examination, but he did not do so.

{¶47} As for Husband's argument regarding the children's standard of living, the court found that during the marriage the parties enjoyed two incomes; owned two homes prior to moving to Ohio, one a rental the other their residence; the children attended private school; the parties

owned three cars and had three savings accounts including Husband's cryptocurrency accounts; and both parties had retirement savings. Thus, the court's finding that a further deviation was not warranted based on the standard of living that the children were accustomed to was supported by competent, credible evidence. The fact that the parties saved and did not make extravagant expenditures does not contradict the court's finding that they enjoyed a financially comfortable standard of living.

{¶48}   For all these reasons, Husband's argument that the trial court abused its discretion in its award of child support is without merit.  His sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR VII.

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ADOPTING A SHARED PARENTING PLAN UNSIGNED BY [HUSBAND], WITHOUT NOTICE OR TESTIMONY[.]**

{¶49}   Here, Husband argues that the court abused its discretion by adopting a plan that was not signed by him and made "without hearing any evidence." Husband also submits that in finding the parties' joint plan to be incomplete for allegedly "unspecified reasons[,]" the trial court "significantly renegotiate[d] the previously agreed terms of the April 2023 Shared Parenting Plan," thus denying him due process.

{¶50}   First, there is no requirement that the court obtain Husband's signature on the shared parenting plan that it adopted. The plan states on its face that it was "made pursuant to R.C. 3109.04(D)(1)(a)." R.C. 3109.04(D)(1)(a)(i) and (ii) provide in relevant part as follows:

> Upon the filing of a pleading or motion by either parent or both parents, in accordance with division (G) of this section, requesting shared parenting and the filing of a shared parenting plan in accordance with that division, the court shall comply with division (D)(1)(a)(i), (ii), or (iii) of this section, whichever is applicable:
>
> (i) *If both parents jointly make the request in their pleadings or jointly file the motion and also jointly file the plan*, the court shall review the parents' plan to

determine if it is in the best interest of the children. If the court determines that the plan is in the best interest of the children, the court shall approve it. *If the court determines that the plan or any part of the plan is not in the best interest of the children, the court shall require the parents to make appropriate changes to the plan to meet the court's objections to it.* If changes to the plan are made to meet the court's objections, and if the new plan is in the best interest of the children, the court shall approve the plan. If changes to the plan are not made to meet the court's objections, or if the parents attempt to make changes to the plan to meet the court's objections, but the court determines that the new plan or any part of the new plan still is not in the best interest of the children, the court may reject the portion of the parents' pleadings or deny their motion requesting shared parenting of the children and proceed as if the request in the pleadings or the motion had not been made. The court shall not approve a plan under this division unless it determines that the plan is in the best interest of the children.

(ii) *If . . . each [parent] also files a separate plan, the court shall review each plan filed to determine if either is in the best interest of the children.* If the court determines that one of the filed plans is in the best interest of the children, the court may approve the plan. . . .    Division (D)(1)(b) of this section applies in relation to the approval or disapproval of a plan under this division.

(Emphasis added.).

{¶51} Division (D)(1)(b) of R.C. 3109.04, referenced in (ii) above, states that "[t]he approval of a plan under . . . this section is discretionary with the court."  In this case, the court rejected the parties' joint shared parenting plan, stating for cause that it was incomplete for reasons that it specifically enumerated in its order.  Both parties then filed their own separate plans, and the court adopted Wife's plan.  Husband has not pointed to any language in the statute or any case law construing it that requires the court to obtain the parties' signatures upon adopting one of the parties' plans in its discretion.  Furthermore, the plan adopted by the court was supported by findings of fact and conclusions of law based on the testimony and evidence heard at trial which were set forth in the Decree. Therefore, Husband's arguments that the trial court had "unspecified reasons" for finding that the joint plan was incomplete and that the court's plan was adopted without testimony is contradicted by the record.

{¶52} Accordingly, based on the foregoing, Husband's seventh assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR VIII.

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS ALLOCATION OF EXTRAORDINARY MEDICAL EXPENSES FOR THE CHILDREN AND EXTRACURRICULAR EXPENSES FOR THE CHILDREN.**

{¶53} The trial court ordered that the children's extraordinary medical and extracurricular activity expenses be paid 30% by Wife and 70% by Husband. Husband argues that this allocation constitutes an abuse of discretion because it is "financially oppressive given the child and spousal support ordered." Line item 17 of the guideline child support worksheet shows that the income share percentages of the parties' individual incomes to their combined adjusted annual gross incomes is 42.64% for Wife and 57.25% for Husband. However, Husband was ordered to pay a greater share of the children's extraordinary medical and extracurricular activities expenses – 70% instead of 57.25% - and Wife was ordered to pay a lesser share - 30% versus 42.75%. The court did not explain in its order why it decided to allocate the children's extraordinary medical and extracurricular expenses in a manner that was not consistent with the parties' income shares as reflected on the guideline worksheet. While the court may have had a reason for allocating a greater percentage to Husband relative to the parties' income shares, the order is silent in that regard.

{¶54} Accordingly, Husband's eighth assignment of error is sustained in part. The matter is remanded to the trial court to either modify the percentages for extraordinary medical and extracurricular activity expenses to make them consistent with the income shares reflected on the guideline worksheet, or to provide a rationale for its deviation from those percentages.

**ASSIGNMENT OF ERROR IX.**

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS ORDER OF SPOUSAL SUPPORT[.]**

{¶55}   The trial court ordered Husband to pay Wife $900.00 per month in spousal support. In making its award, the court reasoned as follows, in pertinent part:

> After reviewing all relevant testimony and applying all necessary factors of R.C. 3105.18(C) and supporting law the court finds that spousal support is necessary and appropriate.
>
>         . . .
>
> [Wife] earns significantly less than [Husband]. [Wife] earns $41,161.38 and is not eligible for bonuses.  [Wife] testified that she has not taught piano lessons from her home since around the time she began working full time and has no additional income.
>
> [Husband] earns a base salary of $85,000 per year. However [Husband] initially earned $110,000.00 at Kemper during his first year of employment. [Husband] shares expenses by living in his girlfriend's house and splitting expenses. [Husband] has a college degree and master's certifications. [Husband's] advanced degrees and administrative qualifications which enhance his earning ability compared to [Wife's] teaching certification . . . . For the period of April through July, 2022, when income was calculated for purposes of temporary support, [Husband] was in fact collecting income from two sources: 1.) severance payments of $2,500.00 net bi-weekly from St. Paul's and 2.) Kemper net bi-weekly payroll of $3,226.88.

{¶56}   Husband argues that spousal support was inappropriate and unreasonable for the following reasons: (1) under R.C. 3105.18, the sharing of living expenses is not a factor for determining spousal support; (2) there was no testimony regarding whether Wife was sharing living expenses; (3) the dollar amount awarded improperly considered Husband's 4-month severance pay by treating it as ongoing earnings; (4) spousal support is intended to provide for the financial needs of the children, not to equalize the parties' incomes; and (5) the award failed to consider the court-ordered child support award which is one of the factors listed under R.C. 3105.18(C)(1).

{¶57} In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, duration and terms of payment, R.C. 3105.18(C)(1)(a)-(n) sets forth 14 factors that the trial court shall consider in making an award of spousal support. There is no set mathematical formula for determining the amount and duration of support. *Kaechele v. Kaechele,* 35 Ohio St.3d 93, 96 (1988). The trial court must weigh all of the factors listed in R.C. 3105.18(C) and "not base its determination upon any one of those factors taken in isolation." *Id*. "[T]he trial court need not comment on each factor, but the record must demonstrate that the court considered each factor in making its spousal support award." *Barlow v. Barlow*, 2009-Ohio-3788, at ¶ 22 (9th Dist.).

{¶58} It is well settled that the trial court is vested with broad discretion over matters of spousal support. *Poitinger v. Poitinger*, 2005-Ohio-2680, ¶ 7 (9th Dist.). Therefore, "[t]his Court reviews a trial court's award of spousal support under an abuse of discretion standard." *Krone v. Krone*, 2011-Ohio-3196, ¶ 8 (9th Dist.). We incorporate the abuse of discretion standard as outlined above.

{¶59} Turning to Husband's arguments, while the sharing of living expenses is not a specific factor under R.C. 3105.18(C)(1)(a)-(n), part (n) provides that the "court shall consider . . . *[a]ny other factor* that the court expressly finds to be relevant and equitable." (Emphasis added.) Here, the court "expressly [found]" that Husband's sharing of living expenses with his girlfriend was a relevant factor. R.C. 3105.18(C)(1)(n). The record contains competent, credible evidence in support of the specific expenses that Husband shared with her as noted in our analysis under Husband's sixth assignment of error. Husband has not cited to any legal authorities stating that the court cannot consider the sharing of living expenses as a spousal support factor. Thus, the court's consideration of Husband's shared living expenses is not an abuse of discretion.

{¶60} Next, as previously noted and as Husband himself pointed out, he did not elicit any testimony from Wife regarding any shared living expenses that she may have benefitted from. If Husband was unsatisfied with Wife's testimony on direct examination on this subject, he could have inquired of her on cross-examination, but he did not do so. It was not the court's duty to sua sponte consider it.

{¶61} Regarding Husband's earnings, we note preliminarily that other than the child support worksheet, which includes the annual spousal support award as a line item in both parties' columns, there is no other record of the court's calculation of spousal support, such as a separate spousal support worksheet setting forth the parties' incomes, expenses, tax payments etc., reflecting how it arrived at $900 per month for spousal support. The court's mention of Husband's two sources of income for a 4-month period when he was receiving severance is simply a statement of fact regarding the parties' circumstances at temporary orders and did not pertain to its calculation of final spousal support.

{¶62} Furthermore, the child support worksheet reflects that the court utilized $85,000 for Husband's income which was his salary at his previous job, prior to his employment with Kemper. As of the trial, he was working at Kemper earning $110,000 per year. Thus, it appears that the court utilized a lesser income for Husband in making its support calculations than Husband's actual income as of trial, which favors Husband. However, even if that is not the case and the court considered his income as $110,000 for spousal support purposes, Husband does not contest that $110,000 was his income from Kemper at the time of trial. Moreover, as previously noted, Husband has not directed this Court to any place in the record demonstrating that the trial court equalized the parties' incomes as he alleges.

{¶63} As for the court's alleged failure to consider Husband's court-ordered child support, which is a factor under R.C. 3105.18(C)(1)(i), the trial court expressly stated that it reviewed "*all necessary factors of R.C. 3105.18(C)*" in making its spousal support award (Emphasis added.). Therefore, we presume that the trial court considered Husband's court-ordered child support payment since it is one of the statutory factors. Thus, the trial court engaged in the required analysis and "demonstrate[d] that [it] considered each factor in making its spousal support award." *Barlow*, 2009-Ohio-3788, at ¶ 22 (9th Dist.).

{¶64} Accordingly, based on the trial court's express statement that it considered all of the required statutory factors, and in consideration of its findings regarding the factors it considered relevant, which were supported by competent, credible evidence, the court's spousal support award does not constitute an abuse of discretion. Husband's argument on this issue is not well-taken and is overruled. *See Hamrick*, 2024-Ohio-2517, at ¶ 15 (9th Dist.).

## ASSIGNMENT OF ERROR NO. X.

### THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS VALUATION OF CRYPTOCURRENCY.

{¶65} The trial court found that Husband transferred $71,719.41 through various Coinbase cryptocurrency accounts and ordered him to pay Wife $35,859.70, one-half the value, for her interest in those accounts. In arriving at its conclusion, the trial court noted that Husband provided no tangible discovery or evidence at trial as to the cryptocurrency. Husband argues that the trial court's valuation is "pure conjecture and is not based upon any facts or evidence submitted at the trial in this matter." We disagree with Husband.

{¶66} "A trial court has discretion in determining how to value a marital asset and in fashioning an equitable division of marital property." *Kiernan v. Ward*, 2022-Ohio-1303, ¶ 8 (9th Dist). "A trial court's determination as to the value of marital assets must be affirmed if it is

supported by competent, credible evidence and is not otherwise an abuse of discretion." *Mercer v. Mercer*, 2024-Ohio-4827, ¶ 43 (9th Dist), citing *Berger v. Berger*, 2015-Ohio-5519, ¶ 20-21 (11th Dist.). Because the trial court is in the best position to evaluate the credibility of witnesses, it is "important that . . . a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

**{¶67}** At trial, Wife provided statements with a transaction history from 2019 through May 2022 obtained through a subpoena from Coinbase (Wife's Exhibit 25) reflecting total withdrawals of $71,719.41. Husband argues that Wife's Exhibit 25 is not competent, credible evidence of the value of the cryptocurrency because it "treat[ed] 'sent' entries as losses or withdrawals"; does not reflect a fair-market value as of the marriage termination date or any other proper valuation date; showed no certification; and there was no custodian testimony to qualify the statements as business records.

**{¶68}** Husband did not object to Wife's Exhibit 25 at trial. It was admitted into evidence without any objection. Husband admitted on cross-examination that he had no documents to show where he transferred the cryptocurrency even though those documents were requested from him during discovery. His exhibit list for trial does not include any documents regarding the cryptocurrency. Clearly Husband did not come to trial prepared to present evidence as to the value of the cryptocurrency. While he attempted to submit evidence at trial, his exhibit was not admitted because he could not authenticate it and had never disclosed it to Wife or the court despite repeated requests to him during discovery. Furthermore, Husband testified to the truthfulness of his own affidavit of property which showed a value for the cryptocurrency of $107,784.97. Had the court divided the cryptocurrency based on that value, Wife's half-interest would have been $53,892.49, so Husband benefitted from the court's reliance upon Wife's Exhibit 25.

{¶69} Based on the foregoing, Husband's tenth assignment of error is without merit and is overruled. The court's valuation of the cryptocurrency transfers was supported by competent, credible evidence and did not constitute an abuse of discretion.

## ASSIGNMENT OF ERROR XI.

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING [HUSBAND'S] MOTION FOR A NEW TRIAL.**

## ASSIGNMENT OF ERROR XII.

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING [HUSBAND'S] MOTION FOR STAY PURSUANT TO CIV[.]R[][.] 62(A).**

## ASSIGNMENT OF ERROR XIII.

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING [HUSBAND'S] MOTION FOR MODIFICATION OF SUPPORT PURSUANT TO CIV[.]R. 75(H).**

{¶70} On February 20, 2025, the court held a hearing on Husband's motion for new trial, motion for stay, and motion to modify support. According to the court's journal entry, it "heard arguments from both parties" then took the matter under advisement. However, the record on appeal does not include a transcript of the hearing. "App.R. 9(B)(1) provides that 'it is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record, however those proceedings were recorded, are transcribed in a form that meets the specifications of App.R. 9(B)(6).'" (Emphasis omitted.) *State v. Tinley*, 2018-Ohio-2239, ¶ 6 (9th Dist.). App.R. 9(B)(3) provides that "[t]he appellant shall order the transcript in writing and shall file a copy of the transcript order with the clerk of the trial court." When an appellant fails to provide a complete record, we presume the regularity of the proceedings in the trial court and affirm its judgment. *State v. Lothes*, 2012-Ohio-1388, ¶ 7 (9th Dist.).

{¶71} Because Husband failed to ensure that these proceedings were transcribed in accordance with App.R. 9, this Court has no choice but to presume regularity and affirm. *Lothes* at ¶ 7. Consequently, Husband's eleventh, twelfth, and thirteenth assignments of error are overruled as this Court cannot resolve them on their merits in the absence of a trial transcript.

{¶72} For all the reasons stated above, Husband's eleventh, twelfth, and thirteenth assignments of error are overruled. The court did not abuse its discretion in denying Husband's motion for new trial, motion for stay, and motion to modify support.

### III.

{¶73} Based on the foregoing, Husband's first through seventh, and ninth through thirteenth assignments of error are overruled. Husband's eighth assignment of error is sustained in part. The judgment of the Lorain County Common Pleas Court, Domestic Relations Division is affirmed in part, reversed in part, and remanded.

Judgment affirmed in part,
reversed in part, and
remanded..

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, P. J.
CONCURS IN JUDGMENT ONLY.

SUTTON, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

ALEXIS M. GACEY and BRITTANY A. BARON, Attorneys at Law, for Appellant.

RICHARD A. RABB and LAUREN K. MAYELL, Attorneys at Law, for Appellee.